IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Virginia

AMERICAN INTERNATIONAL
SPECIALTY LINES INSURANCE COMPANY

    Plaintiff,

v.                                    Civil Action No. 3:09cv32

A.T. MASSEY COAL COMPANY, INC.,
et al.,

    Defendants.

## MEMORANDUM OPINION

This matter is before the Court on A.T. Massey Coal Company, Inc.'s Motion to Dismiss the Petition to Compel Arbitration Against American International Specialty Lines Insurance Company ("AISLIC") (Docket No. 12).  For the reasons set forth below, A.T. Massey Coal Company, Inc.'s motion will be denied, and the claims at issue between Massey and AISLIC shall be transferred to the United States District Court for the Southern District of New York.  The Court reserves judgment on the proper resolution of SR International Business Insurance Co., Ltd. and HDI-Gerling Industrie Versicherung AG's Counter-Petitions and Cross-Petitions to Compel Comprehensive Consolidated Arbitration (Docket Nos. 6, 27) pending further briefing by the parties.

## BACKGROUND

Petitioner, AISLIC, is an Illinois company operating in the insurance industry.  Respondents, A.T. Massey Coal Company, Massey Energy Company, and Central West Virginia Energy Company (collectively "Massey"), are Virginia companies engaged in the coal mining industry.  The events that gave rise to the underlying insurance coverage dispute occurred in West Virginia.

On April 23, 2005, Wheeling Pittsburgh Steel Corporation and Mountain State Carbon, LLC (collectively "Wheeling Pitt") filed an action against Massey in Brooke County, West Virginia.  Defs' Mot. at 3.  Wheeling Pitt alleged that Massey's failure to supply coal under a long-term coal supply agreement caused significant property damage to one of the Wheeling Pitt Follansbee Plant's coke oven batteries, located in West Virginia.  Id. at 3. Wheeling Pitt further alleged that Massey's failure to supply coal forced Wheeling Pitt to purchase replacement coke (a required ingredient in the steelmaking process) on the "spot market" at a price well above the agreed-upon price in the contract.  Id.

The underlying action went to trial in the summer of 2007 in West Virginia, and the jury returned a verdict against Massey for approximately $243 million.  Massey paid

2

the $267,438,039 final judgment by wire transfers on December 2 and 3, 2008.  See id.

Before Wheeling Pitt filed the underlying action, Massey had purchased four general liability insurance policies from AISLIC, XL Insurance Company Limited ("XL"), HDI-Gerling Industrie Versicherung AG ("Gerling"), and SR International Business Insurance Co. Ltd. ("SRI"), respectively.  Id.  The policies assertedly provide Massey with a total of $90 million of insurance coverage, and each policy is obligated to provide coverage when Massey's covered liability reaches that policy's attachment point.  Id.  The AISLIC policy is the lead policy, and has limits of $15 million in excess of a $10 million retention.  Id. at 1.  The XL, Gerling, and SRI policies are excess liability policies, each with $25 million in coverage, which follow the terms and conditions of the AISLIC policy, unless otherwise indicated.  Id.

The AISLIC policy contains an "Arbitration Amendment Endorsement," which provides that "[i]n the event of a disagreement between the Company and the Insured under this Policy, the disagreement shall be submitted to binding arbitration before a panel of three (3) arbitrators."  Id. at 4.  The Endorsement contains a provision requiring that "[t]he arbitration proceedings shall take place in or in

the vicinity of New York, NY."   Id.   The Endorsement allegedly replaced Standard Condition IV(B) in the AISLIC policy, which provides that "[a]ny and all disputes arising under or relating to this Policy, including its formation and validity, and whether between the Company and the Insured or any person or entity deriving rights through or asserting rights on behalf of the Insured, shall be finally and fully determined in Bermuda under the provisions of The Bermuda International Conciliation and Arbitration Act 1993 . . . ."   Id.

Pursuant to the coverage requirements of the foregoing policies, Massey provided timely notice of the underlying action to its insurers, and Massey then demanded that the insurers, subject to the limits of liability specified in their policies, acknowledge their obligations to indemnify Massey for any legal liabilities incurred in connection with the underlying action.   Id.   The insurers acknowledged Massey's notice and issued reservation of rights letters purporting to investigate the claim.   Id. at 5.

During the course of the underlying action, Massey kept the insurers updated concerning the progress of the litigation.   On October 26, 2007, Massey representatives met with AISLIC representatives in New York to provide an update concerning the status of the underlying action.   Id.

4

On April 16, 2008, AISLIC and XL sent letters to Massey disclaiming any and all coverage under their policies for Massey's liability in the underlying action.   Massey responded to both AISLIC and XL, requesting that they reconsider their respective positions. On September 10, 2008, AISLIC sent a letter to Massey reaffirming its denial, and further stated that it "remain[ed] willing to discuss a possible resolution of this matter short of arbitration."   Id.   On November 21, 2008, both AISLIC and XL filed essentially identical arbitration demands against Massey.   Id. at 6.

On November 21, 2008, Gerling sent a letter to Massey denying coverage for the underlying action and also filed an arbitration demand against Massey.   Id.   That same day, Gerling filed an action against Massey and the other insurers in the Circuit Court of the City of Richmond, Virginia requesting enforcement of the arbitration provision, and, in the alternative, seeking a declaratory judgment denying coverage.   Id.   Gerling's Virginia Complaint did not assert any affirmative claims against Massey's other insurers who were also named as defendants. Id.   On December 29, 2008, AISLIC answered Gerling's Virginia complaint and requested a trial by jury "on all issues joined."   Id.

5

On November 24, 2008, SRI sent a letter to Massey denying coverage for the underlying Action, and SRI also filed an arbitration demand against Massey.  Id.

On December 15, 2008, Massey filed an action in the Circuit Court of Mingo County, West Virginia (the "West Virginia Action") against all of its insurers demanding coverage under the insurance policies.  Id.  The West Virginia Action seeks a declaration that all of Massey's insurers owe coverage to Massey with respect to the underlying action.  Id.  Massey is also seeking damages against all of its insurers for breach of contract, breach of duty of good faith and fair dealing, and their violations of West Virginia's Unfair Trade Practices Act.

On January 13, 2009, SRI filed a notice of removal of the West Virginia Action to the Southern District of West Virginia.  Id.  AISLIC and XL consented to the removal on January 26, 2009.  Id.  SRI, XL, and Gerling moved to dismiss Massey's Complaint in the West Virginia Action on January 26, 2009.  Id.  AISLIC did not move to dismiss the West Virginia Action and instead answered Massey's Complaint on January 26, 2009.  Id. at 7.

Since AISLIC's November 21, 2008 arbitration demand against Massey, AISLIC and Massey have engaged in discussions regarding the logistics of the putative

arbitration and the selection of an arbitration panel.   Id.
Those discussions are allegedly ongoing.   Id.

On January 14, 2009, AISLIC filed this Petition to
Compel Arbitration against Massey and Massey's "other
liability" insurers: Gerling, XL, and SRI.   On February 5,
2009, Massey filed a Motion to Dismiss the Petition to
Compel Arbitration.   This motion has been fully briefed and
is now ripe for decision.

DISCUSSION

### I.    The Applicable Standard

A motion to dismiss under Rule 12(b)(6) seeks to test
the legal sufficiency of the factual allegations made in
the Complaint.   The court must take all factual allegations
made in the Complaint as true, and must draw all reasonable
and favorable inferences from those facts.   Eastern Shore
Markets, Inc v. JD Associates Ltd. Partnership, 213 F.3d
175, 180 (4th Cir. 2000).   To survive a motion to dismiss,
the Complaint must state the "grounds of [its] entitlement
to relief, [which] requires more than labels and
conclusions, and a formulaic recitation of the elements of
a cause of action will not do." Bell Atlantic v. Twombly,
127 S.Ct. 1955, 1965 (2007) (internal quotations omitted).
Furthermore, the facts, as they are plead, must raise the
right to recovery "above the speculative level." Id.   As

7

such, the Complaint must "allege enough facts to state a claim for relief that is plausible on its face." Bell Atlantic, 127 S.Ct. at 1974; accord Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008).

Ordinarily, a court may not consider any documents that are outside of the Complaint in deciding a motion to dismiss, unless the motion is converted into one for summary judgment. Witthohn v. Fed. Ins. Co., 164 Fed. Appx. 395, 396-97 (4th Cir. 2006). Nevertheless, "a court may consider official public records, documents central to a plaintiff's claim, and documents sufficiently referred to in the Complaint without converting the motion to dismiss into one for summary judgment, so long as the authenticity of such documents is not disputed." Id.; see also Gasner v. Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995) (permitting the judicial notice of public documents, such as court records, even when the documents are neither referenced by nor integral to the plaintiff's complaint). Accordingly, the Court will consider any such documents insofar as they are relevant to the disposition of Massey's Motion to Dismiss.

II. **AISLIC's Standing To Compel Massey To Arbitrate Its Dispute With The Other Insurance Companies Named In This Action**

As a preliminary matter, Massey contends that "AISLIC lacks the necessary standing to request arbitration between Massey and all of its insurers" because "AISLIC is not in contractual privity with the other insurers, and AISLIC, as the first-layer umbrella insurer, is at no risk of injury arising from coverage under the other insurers' excess policies." Defs' Mot. at 7.

To satisfy the "irreducible constitutional minimum of standing," a plaintiff must show an "injury in fact" that is "traceable to the challenged action of the defendant," and must also demonstrate "that [its] injury will likely be redressed by a favorable decision." See Hodges v. Abraham, 300 F.3d 432, 443 (4th Cir. 2002) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). In this case, the arbitration contracts at issue were individually executed between Massey and the various insurance companies who are named in this action. Accordingly, there was no privity of contract between AISLIC and the other insurers named as Defendants.

As a general matter, "arbitration is a matter of contract [interpretation] and a party cannot be required to submit to arbitration any dispute which he has not agreed

9

so to submit." Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416 (4th Cir. 2000). "It is [also] well established, however, that a nonsignatory to an arbitration clause may, in certain situations, compel a signatory . . . to arbitrate the signatory's claims against the nonsignatory despite the fact that the signatory and nonsignatory lack an agreement to arbitrate." Am. Bankers Ins. Group v. Long, 453 F.3d 623, 626-27 (4th Cir. 2006). One such situation exists when the signatory is "equitably estopped" from arguing that a nonsignatory is not a party to the arbitration clause. Id. Additionally, when allegations against "a parent company and its subsidiary are based on the same facts and are inherently inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 321 (4th Cir. 1988). Moreover, theories "arising out of common law principles of contract and agency law" can provide a basis for binding nonsignatories to arbitration agreements, including: "incorporation by reference" and "assumption." Int'l Paper Co., 206 F.3d at 417 (citing Thomson-CSF v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995)).

None of these legally-unique scenarios are alleged to be present in this case. Accordingly, it is apparent that AISLIC lacks standing to force Massey to arbitrate its claims against Gerling, XL, and SRI, the other insurers who have been named in this action. Therefore, AISLIC's Petition to Compel Arbitration against these insurers will be dismissed, and the following analysis will pertain only to AISLIC's Petition to Compel Arbitration against Massey.

As a procedural matter, however, Gerling and SRI have also filed Cross-Petitions to Compel Arbitration (Docket Nos. 6, 27) against all of the Defendants.[1] Given the Court's foregoing conclusion that AISLIC lacks standing to assert claims against these Defendants, it appears that the Court does not presently have jurisdiction over these pending Cross-Petitions. However, Gerling and SRI orally asked the Court to consider their Cross-Petitions as original petitions to compel arbitration. The Court has reserved judgment on whether to entertain, transfer, or dismiss these Cross-Petitions until further briefing has been submitted on this issue by the parties.

---

[1] XL has not filed such a petition, and has instead filed its Answer to AISLIC's Petition.

### III. Whether There Is A Sufficient "Case Or Controversy" Present In This Matter

Foremost, Massey contends that "AISLIC has failed sufficiently to allege Massey's 'failure, neglect, or refusal' to arbitrate, as required by Section 4 of the Federal Arbitration Act ("FAA")." Defs' Mot. at 8. Massey also claims that "a petition to compel arbitration before a party has actually refused to arbitrate" does not present the Court "with a justiciable case or controversy to decide." Id. at 9. Fundamentally, therefore, Massey contends that the factual predicate of this case does not evince a sufficient "conflict" between the parties so as to generate a justiciable case or controversy under Article III of the Constitution, the Declaratory Judgment Act ("DJA"), or the FAA. Id. at 7-10. In response, AISLIC contends that, through the filing of the West Virginia Action, Massey has created a sufficient "case or controversy" for this Court to hear its Petition to Compel Arbitration. Pltf's Opp. at 7.

"[T]he threshold requirement imposed by Article III of the Constitution is that those who seek to invoke the power of federal courts must allege an actual case or controversy." O'Shea v. Littleton, 414 U.S. 488, 493 (1974). The same standard applies to actions filed under

12

the DJA. See 28 U.S.C. § 2201(a). Moreover, the law is clear that "unless and until an adverse party *has refused to arbitrate* a dispute putatively governed by a contractual arbitration clause . . . no dispute over whether to arbitrate has arisen, and no harm has befallen the petitioner [and] hence, the petitioner cannot claim to be 'aggrieved' under the FAA." Hartford Acc. & Indem. Co. v. Equitas Reins. Ltd., 200 F. Supp.2d 102, 108 (D. Conn. 2002) (emphasis added); see also Moses H. Cone Memorial Hospital, 460 U.S. at 21 ("an indispensable element of Mercury's cause of action under § 4 for an arbitration order is the Hospital's refusal to arbitrate"). Thus, an essentially identical analytical standard governs Massey's arguments under Article III, the DJA, and the FAA.

Massey contends that "[m]erely showing that a party has initiated a lawsuit, while at the same time engaging in arbitration proceedings, is insufficient to demonstrate the 'failure, refusal or neglect' standard set forth in Section 4." Defs' Mot. at 9. In fact, notwithstanding that Massey filed the West Virginia Action, Massey claims that, far from "refusing" AISLIC's demand to arbitrate the dispute, it has done "exactly the opposite" by actively planning for arbitration with AISLIC. Defs' Mot. at 10. In support of its position, Massey cites to LAIF X SPRL v. Axtel S.A. de

C.V., 390 F.3d 194 (2d Cir. 2004), where the Second Circuit held that the "commencement of suit in Mexico [did not] constitute a refusal to arbitrate," but rather only indicated a preference "not to arbitrate those issues." Id. at 199.

As the Fourth Circuit has noted, however, "an action to compel arbitration is proper when the party against whom the motion to compel is made has commenced litigation that is the subject matter of the parties' arbitration agreement." Discover Bank v. Vaden, 489 F.3d 594, 607 n.20 (4th Cir. 2007) rev'd on other grounds, 129 S. Ct. 1262 (2009) (citing PaineWebber Inc. v. Faragalli, 61 F.3d 1063, 1066 (3d Cir. 1995) (finding that an action to compel arbitration is proper when the other party refuses to arbitrate by "unambiguously manifesting an intention not to arbitrate the subject matter of the dispute")). Under this standard, it is clear that Massey cannot be permitted to create uncertainty as to its willingness to arbitrate, and then use that very uncertainty to resist AISLIC's Petition to Compel Arbitration. Indeed, the Fourth Circuit reached this same conclusion in Discover Bank:

> Although Vaden did not initiate the original
> suit, she counterclaimed in state court and has
> litigated extensively - to the tune of not one,
> but two appeals before this court - to avoid
> arbitration of her claims. To agree with Vaden's

14

> *arguments that she has not refused a request for arbitration in the meaning of the statute would create an absurd result*: reversing a motion to compel arbitration against a party who argues that she never refused to arbitrate in the first place. *Neither common sense nor precedent countenances such a result, and so we find no defect of standing here.*

489 F.3d at 607 n.20 (emphases added).

Similar "absurdity" would result here if Massey were permitted to dismiss AISLIC's Petition for lack of a sufficient "case or controversy" while simultaneously asserting the justiciability of its right not to arbitrate the dispute in the pending West Virginia action. Therefore, consistent with the Fourth Circuit's holding in Discover Bank, it is clear that Massey's filing of the lawsuit in West Virginia manifested its "unequivocal intent" to undermine the arbitration proceedings, even as Massey pays lip service to the notion of arbitration before this Court. Id. Therefore, under the FAA, Article III, and the DJA, AISLIC has alleged a "case or controversy" that satisfies the jurisdictional predicate for this Court to proceed with its Petition.

### IV. The Court's Authority To Compel Arbitration Outside Of Its Jurisdiction

Massey further argues that the Court "should dismiss AISLIC's petition under F.R.C.P. 12(b)(1) because this Court does not have the authority to compel arbitration

outside of its geographic jurisdiction pursuant to Section 4 of the [FAA]." Defs' Mot. at 7. The arbitration clause contained in the agreement executed between Massey and AISLIC states that the "arbitration proceedings shall take place in or in the vicinity of New York, NY." Id. Hence, Massey argues that "this Court does not have the necessary authority to compel arbitration," which would be held in New York City, New York; a location that is "well beyond this Court's geographic jurisdiction." Id. Massey makes this argument under both Fed. R. Civ. P. 12(b)(1) (subject matter jurisdiction), and Fed. R. Civ. P. 12(b)(3) (venue). See Defs' Reply at 6.

## A. The Three Prevailing Judicial Stances

A petition to compel arbitration is governed by the FAA, codified at 9 U.S.C. § 4. Section 4 of the FAA provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, *would have jurisdiction under Title 28, in a civil action . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement . . . .* The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance

with the terms of the agreement. *The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.* If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4 (emphases added).

"The starting point in any case involving statutory construction is the language of the statute itself. When the terms of the statute are clear and unambiguous, that language is controlling absent rare and exceptional circumstances." True Oil Co. v. Commissioner, 170 F.3d 1294, 1299 (10th Cir. 1999) (quotation omitted). Hence, the first task is to look at the statutory language in the context of the entire statute. Id. Additionally, "[i]t is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) (quotations omitted).

In considering the statutory language of 9 U.S.C. § 4, courts have taken three different approaches in deciding whether a federal district court may compel arbitration when the challenged arbitration agreement states that the arbitration itself shall occur in another district. One

17

line of analysis has straightforwardly held that a district court may compel arbitration in the district specified in the arbitration agreement, even though the arbitral district is different from the district in which the petition to compel arbitration is filed.   Dupuy-Busching Gen. Agency, Inc. v. Ambassador Ins. Co., 524 F.2d 1275, 1276, 1278 (5th Cir. 1975) (recognizing a Mississippi district court's order directing parties to proceed with arbitration in New Jersey where the plaintiff sought to avoid arbitration by bringing suit in Mississippi, rather than in the contract forum of New Jersey).

A second approach, which permits a district court to compel arbitration in its own district and to ignore the forum specified in the arbitration clause, has also been endorsed by a number of courts.  The Ninth Circuit, for instance, employed this approach in Textile Unlimited, Inc. v. A.BMH & Co., 240 F.3d 781 (9th Cir. 2001), where the court held that the FAA "does not require venue in the contractually-designated locale."   Id. at 783; accord Indian Harbor Ins. Co. v. Global Transp. Sys., Inc., 197 F. Supp. 2d 1 (S.D.N.Y. 2002).  In reaching this decision, the Ninth Circuit relied on Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co., 529 U.S. 193 (2000), which held that the venue provisions of §§ 9-11 of the FAA are

18

permissive and permit a motion to confirm, vacate, or modify an arbitration award to be brought in any district court where venue is proper. Id. at 195. The court in Textile Unlimited decided that the §§ 9-11 venue analysis of Cortez Byrd Chips should apply to the FAA as a whole, and determined that, on its face, "§ 4 only confines the arbitration to the district in which the petition to compel is filed. It does not require that the petition be filed where the contract specified that arbitration should occur." Textile Unlimited, Inc., 240 F.3d at 785.

A third approach has been taken by a majority of courts to consider the issue. The majority view holds that, where the parties have agreed to arbitrate in a particular forum, only a district court in that forum has the authority to compel arbitration under § 4 of the FAA. See, e.g., Ansari v. Qwest Communs. Corp., 414 F.3d 1214, 1220-21 (10th Cir. 2005); Inland Bulk Transfer Co. v. Cummins Engine Co., 332 F.3d 1007, 1018 (6th Cir. 2003); Mgmt. Recruiters Int'l, Inc. v. Bloor, 129 F.3d 851, 854 (6th Cir. 1997); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer, 49 F.3d 323, 327 (7th Cir. 1995); Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc., 269 F. Supp. 2d 356, 363 (S.D.N.Y. 2003); Roe v. Gray, 165 F. Supp. 2d 1164, 1173 (D. Colo. 2001). In other words, under the

majority position, "a district court lacks authority to compel arbitration in other districts, or in its own district, if another [district] has been specified for arbitration." Merrill Lynch, 49 F.3d at 328. In reaching this conclusion, these courts have uniformly taken the view that "[a]ny other result renders meaningless the § 4 mandate that arbitration and the order compelling arbitration issue from the same district." Mgmt. Recruiters Int'l, 129 F.3d at 854; see, e.g., Merrill Lynch, 49 F.3d at 327; Ansari, 414 F.3d at 1221 ("The prohibition on extrinsic orders affecting arbitration thus is clear both from the language of § 4 itself, prescribing a geographic nexus between the arbitration and the court issuing an order to compel, and the case law which has interpreted this as a directive to courts to abstain from controlling intervention in arbitration proceedings outside their district.").

The Fourth Circuit has yet to rule directly on whether, pursuant to § 4 of the FAA, a district court has the authority to compel arbitration outside of its geographic jurisdiction. With this in mind, the well-reasoned majority position articulated above is highly persuasive. Furthermore, the Fourth Circuit has strongly *implied* that it would align itself with the majority

20

position if it were squarely presented with the issue.  See Elox Corp. v. Colt Industries, Inc., 1991 U.S. App. LEXIS 29323, at *4-5 (4th Cir. 1991) (unpublished) ("The [FAA] provides that a district court deciding a motion to compel arbitration shall defer to the terms of the parties' agreement.  The district court must, therefore, apply a forum selection clause contained in the agreement if such a clause exists.  Further, if a court orders arbitration, the arbitration must be held in the same district as the court.") (internal citations omitted).

The majority view is faithful to the statutory text of § 4 of the FAA, and the decisions expressing that view are persuasive.  Therefore, the Court subscribes to that position.

### B.  Whether The Above Analysis Affects This Court's Subject Matter Jurisdiction

Massey initially predicated its "geographic" objection to AISLIC's Petition on this Court's purported lack of subject matter jurisdiction under Rule 12(b)(1).  Defs' Mot. at 7.  In their Reply Memorandum, however, Massey clarified that it was objecting to the filing of AISLIC's Petition in Virginia on the basis of both subject matter jurisdiction and venue.  Defs' Reply at 6.  Given this

equivocation, some clarification about these basic concepts seems necessary.

Venue is sometimes confused with jurisdiction. However, the two concepts are quite different. As the Supreme Court has held: "The jurisdiction of the federal courts - their power to adjudicate - is a grant of authority to them by Congress and thus beyond the scope of litigants to confer. But the locality of a lawsuit - the place where judicial authority may be exercised - though defined by legislation, relates to the convenience of litigants and as such is subject to their disposition." Neirbo Co. v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 168 (1939). This basic distinction between the Court's power and the litigant's convenience is fundamental in the federal courts. See id.

This distinction has two important consequences. Because venue is for the convenience of litigants, it is a personal privilege of defendants and can be waived by the parties. Image Software, Inc. v. Reynolds & Reynolds Co., 459 F.3d 1044, 1052 (10th Cir. 2006). In this respect, venue is similar to personal jurisdiction, which can also be waived, but it is unlike subject matter jurisdiction, which cannot be waived by the parties. Id. The other consequence is that if the statutory rules on venue are not

22

followed, and an objection is made on the ground of improper venue, the action cannot be heard in that district, even though the court may have jurisdiction over the subject matter and the defendants. See Neirbo Co., 308 U.S. at 167-68.

Various circuit courts have referred to the relevant language in § 4 of the FAA as a "venue provision." See, e.g., Dumont v. Saskatchewan Gov't Ins., 258 F.3d 880, 887-88 (8th Cir. 2001); Doctor's Assocs., Inc. v. Stuart, 85 F.3d 975, 983 (2d Cir. 1996); Merrill Lynch, 49 F.3d at 327 (7th Cir. 1995); Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc., 499 F.2d 1391, 1394 (3d Cir. 1974); Farr & Co. v. Cia. Intercontinental de Navegacion de Cuba, 243 F.2d 342, 346 (2d Cir. 1957).[2]  For these courts, the proper objection in this case would be filed pursuant to Rule 12(b)(3).

Other courts, however, have taken the view that, when the parties have agreed to arbitrate a dispute in a foreign jurisdiction, the presiding district court no longer has "jurisdiction" to resolve the arbitrable claims. See, e.g., Jacobsen v. J.K. Pontiac GMC Truck, Inc., 2001 U.S.

---

[2] Most relevant to this case, the Third and Seventh Circuits specifically referred to § 4 as a venue provision even as they held that, under § 4's mandatory language, a district court could not compel arbitration in another district. See Merrill Lynch, 49 F.3d at 327-28; Econo-Car Int'l, Inc., 499 F.2d at 1394.

Dist. LEXIS 20393 (N.D. Ill. Dec. 10, 2001); Johnson v. Universal Fin. Group, Inc., 2002 U.S. Dist. LEXIS 15662 (N.D. Ill. Aug. 22, 2002); accord Harris v. United States, 841 F.2d 1097, 1099 (Fed. Cir. 1988) (upholding district court dismissal under Rule 12(b)(1)); Atkins v. Louisville & Nashville R.R. Co., 819 F.2d 644, 647 (6th Cir. 1987) (treating dismissal as one under Rule 12(b)(1)).   These courts thereby hold that dismissal under Rule 12(b)(1) is appropriate.

Notwithstanding the uncertainty created by the divergent views respecting the proper classification of § 4, it is significant that courts uniformly have treated other, similar provisions of the FAA as venue requirements. In Cortez Byrd Chips, 529 U.S. at 195, for example, the Supreme Court specifically classified 9 U.S.C. §§ 9-11 as "venue" provisions.   Furthermore, treating § 4 of the FAA as a venue provision makes sense in light of the fact that the FAA does not itself confer subject matter jurisdiction. See Moses H. Cone Mem'l Hosp. v. Mercury Construction Co., 460 U.S. 1, 26 n.32 (1983).   Indeed, an earlier provision of § 4 addresses the need for a jurisdictional basis independent of the FAA, indicating that a party seeking to compel arbitration may do so in "any United States district court which, save for such [arbitration] agreement, would

have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties." 9 U.S.C. § 4. Finally, § 4 serves the purpose that venue statutes traditionally serve in that it "refers to locality," i.e., "the place where a lawsuit should be heard." 1mage Software, Inc., 459 F.3d at 1053 (citing 15 Charles Alan Wright, Federal Practice & Procedure, § 3801). Therefore, because § 4 of the FAA speaks only to venue, Massey's argument under Fed. R. Civ. P. 12(b)(1) is improper.

      C.   **Whether This Matter Should Be Transferred Or Dismissed**

As the foregoing discussion makes clear, venue in this district is improper in this case. Hence, the Court can either dismiss the action or transfer it to a jurisdiction where venue is proper. This decision is left to the Court's discretion. See, e.g., Cont'l Cas. Co. v. Am. Nat'l Ins. Co., 417 F.3d 727, 733 (7th Cir. 2005) (dismissing the case after finding venue to be improper); see also Bank of Commerce & Trust Co. v. Aichholz, 2003 U.S. Dist. LEXIS 20886, at *12 (D. Kan. Nov. 18, 2003) (transferring the dispute over arbitration after determining that venue was improper). In this case, neither Massey nor AISLIC have made a motion to transfer.

Nonetheless, the transfer of a case can be accomplished *sua sponte*. See Jensen v. Klayman, 115 Fed. Appx. 634, 635-36 (4th Cir. 2004).

It is well established that the transfer of a case to cure improper venue should only occur when such a transfer would be "[f]or the convenience of parties and witnesses," and would also be "in the interest of justice." 28 U.S.C. § 1404(a). Significantly, the events underlying this Petition occurred almost exclusively in West Virginia. Thus, West Virginia would undoubtedly be a convenient forum to hear AISLIC's Petition. Nevertheless, from the fact that the parties freely chose New York as the location of their putative arbitration, it is apparent that New York also has been deemed a convenient forum for arbitration by the parties. Moreover, given the freely-negotiated forum selection clause contained in the insurance agreement, it appears that transferring the case to the agreed-upon location of arbitration would be in the interest of justice. See, e.g., Braman v. Quizno's Franchise Co., LLC, 2008 U.S. Dist. LEXIS 97929, at *18 (N.D. Ohio Feb. 20, 2008) ("[I]f the forum selection clause is mandatory, then, the interest of justice would weigh toward transfer."). Therefore, this Court will transfer venue to the United

States District Court for the Southern District of New York, where it is proper.[3]

## CONCLUSION

Because AISLIC lacks standing to enforce the arbitration agreements between Massey and its other insurers, AISLIC's Petition to Compel Arbitration against these other insurers will be dismissed. Judgment on Gerling and SRI's Cross-Petitions to Compel Arbitration (Docket Nos. 6, 27) is reserved pending the submission of further briefing by the parties.

Massey's Motion to Dismiss (Docket No. 12) will be denied with respect to AISLIC. Nevertheless, given the venue-specific insurance policy executed between AISLIC and Massey, venue in this Court is improper. Therefore, the claims at issue between Massey and AISLIC shall be transferred to the United States District Court for the Southern District of New York.

However, the Orders implementing this decision will be held in abeyance pending further briefing pursuant to a schedule set by the Court in a separate Order.

---

[3] This "venue" conclusion obviates the need for this Court to address the additional substantive arguments advanced by Massey in its Motion to Dismiss, and these issues should be resolved in the United States District Court for the Southern District of New York.

It is so ORDERED.

_____ /s/ _____   REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:   June 2, 2009